**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Brianna Jobes, | No. CV-22-01160-PHX-JZB |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

Plaintiff challenges the denial of her application for disability insurance benefits under Title II of the Social Security Act ("the Act") by Defendant, the Commissioner of the Social Security Administration ("Commissioner" or "Defendant"). Plaintiff exhausted administrative remedies and filed a Complaint seeking judicial review of that denial. (Doc. 1.) The parties consented to magistrate judge jurisdiction (Doc. 9, 12-13), and the Court otherwise exercises jurisdiction pursuant to 42 U.S.C. § 405(g). Having reviewed Plaintiff's Opening Brief (Doc. 16, "Pl. Br."), Defendant's Answering Brief (Doc. 20, "Def. Br."), Plaintiff's Reply (Doc. 21, "Reply"), and the Administrative Record (Doc. 15, "AR."), the Court hereby affirms the Commissioner's unfavorable decision.

**I.    THE SEQUENTIAL EVALUATION PROCESS AND JUDICIAL REVIEW**

To determine whether a claimant is disabled for purposes of the Act, the Administrative Law Judge ("ALJ") follows a five-step process. *E.g.*, 20 C.F.R. § 404.1520(a)(4). The claimant bears the burden of proof at the first four steps, but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir.

1999). At the first step, the ALJ determines whether the claimant is engaging in substantial, gainful work activity. 20 C.F.R. § 404.1520(a)(4)(i). If the claimant is engaged in disqualifying work, she is not disabled. *Id*. If she is not engaged in such work, the analysis proceeds to step two, where the ALJ determines whether the claimant has a "severe" medically-determinable physical or mental impairment. *Id*. § 404.1520(a)(4)(ii). If the claimant has no such impairment, she is not disabled. *Id*. If she does, the analysis proceeds to step three, where the ALJ considers whether the claimant's impairment or combination of impairments meets or is medically equivalent to an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. *Id*. § 404.1520(a)(4)(iii). If so, the claimant is disabled. *Id.* If not, the ALJ assesses the claimant's residual functional capacity ("RFC") and proceeds to step four,[1] where the ALJ determines whether the claimant is still capable of performing her past relevant work. *Id*. § 404.1520(a)(4)(iv). If the claimant can perform her past relevant work, she is not disabled. *Id*. If she cannot, the analysis proceeds to the fifth and final step, where the ALJ determines if the claimant can perform any other work in the national economy based on her RFC, age, education, and work experience. *Id.* § 404.1520(a)(4)(v). If the claimant cannot perform any other work, she is disabled. *Id.* The claimant's disability must last, or be expected to last, "for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A).

The Court may set aside the Commissioner's disability determination only if the determination is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). "Substantial evidence is more than a mere scintilla but less than a preponderance . . . It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotations and citations omitted). In determining whether substantial evidence supports a decision, the court "must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Id.* (quotations and citations omitted). As a general rule, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports

---

[1] The RFC "is the most [the claimant] can still do despite [her] limitations." 20 C.F.R. § 404.1545(a)(1).

- 2 -

the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted).

## II. PROCEDURAL HISTORY

Plaintiff filed a Title II application for disability benefits in February 2020 alleging disability beginning March 2019. (AR. at 33, 212-18.) Plaintiff alleged disability resulting from cervical disc disorder with myelopathy, anxiety disorder, and hydrocephalus. (AR. at 248.) Of note, she underwent a cervical microdiscectomy and interbody arthrodesis surgery in December 2019. (AR. at 514.) The Commissioner denied Plaintiff's application at the initial and reconsideration stages of administrative review (AR. at 134-39, 141-44), and Plaintiff requested a hearing before an ALJ. (AR. at 145-46.) ALJ Melissa Hammock conducted a telephonic hearing on November 15, 2021, at which the Plaintiff and a vocational expert ("VE") testified. (AR. at 68-89.) ALJ Hammock denied Plaintiff's application in a written decision dated December 10, 2021. (AR. at 30-57.)

In the decision, ALJ Hammock found Plaintiff had not engaged in disqualifying work activity since her onset date, and that she suffered from medically-determinable, severe impairments including cervical degenerative disc disease, status-post anterior cervical discectomy and fusion, lumbar dextroscoliosis, bipolar disorder, generalized anxiety disorder, and posttraumatic stress disorder. (AR. at 35-37.) The ALJ found Plaintiff's impairments did not meet or medically equal the criteria of any listed impairment. (AR. at 37-39.) Regarding RFC, the ALJ made the following findings:

> [T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except she can lift, carry, push, or pull up to 10 pounds frequently, sit for six hours, and stand and/or walk for six hours in an eight-hour workday. The claimant can never crawl, reach overhead bilaterally, or climb ladders, ropes, or scaffolds, but she can frequently finger and feel bilaterally, and she can occasionally kneel and crouch. She can perform simple, routine tasks, make simple work related decisions, and adapt to occasional changes in the work routine, but she cannot work at a production rate pace. The claimant can have occasional interaction with supervisors and coworkers, but she can have no interaction with the public.

(AR. at 39.) The ALJ concluded Plaintiff could not perform her own past relevant work,

but she could perform other work existing in significant numbers, such as small parts assembler, electrical accessories assembler, and price marker; and that Plaintiff was not disabled at step five. (AR. at 49-50.)

## III.   DISCUSSION

Plaintiff raises two issues: (1) whether the ALJ erred by failing to reconcile a conflict in the vocational evidence; and (2) whether the ALJ erred by failing to properly address the opinion evidence of record. (Pl. Br. at 1.) The Court notes that a third issue—"[w]hether the Court should remand for a new hearing[]"—is not substantively briefed, and Plaintiff foregoes any argument the Court should remand for the payment of benefits. (Pl. Br. at 1, 15-16.)[2] Having reviewed the briefs and administrative record, the Court finds the ALJ did not err.

### A.   The ALJ did not err by failing to reconcile a conflict in the vocational evidence.

At step five of the sequential evaluation, it is the agency's burden to prove the claimant can perform jobs existing in significant numbers in the national economy. *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 689 (9th Cir. 2009). "[T]he agency may meet its burden either '(1) by the testimony of a vocational expert, or (2) by reference to the Medical–Vocational Guidelines at 20 C.F.R. pt. 404, subpt. P, app. 2.'" *Maxwell v. Saul*, 971 F.3d 1128, 1130 (9th Cir. 2020) (quoting *Tackett*, 180 F.3d at 1099).[3] "But the grids are inapplicable '[w]hen a claimant's non-exertional limitations are "sufficiently severe" so as to significantly limit the range of work permitted by the claimant's exertional limitations.'" *Hoopai v. Astrue*, 499 F.3d 1071, 1075 (9th Cir. 2007) (quoting *Burkhart v. Bowen*, 856 F.2d 1335, 1340 (9th Cir.1988)). Where the ALJ relies upon VE testimony, he may pose a hypothetical question to the expert matching the limitations from the RFC,

---

[2] The Court will consider only those issues "argued specifically and distinctly in a party's opening brief[,]" and "[a] bare assertion of an issue does not preserve a claim." *Indep. Towers of Washington v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003) (internal quotations and citations omitted).

[3] The Medical-Vocational Guidelines, known as the grids, "are a short-hand method for determining the availability and numbers of suitable jobs for a claimant." *Tackett*, 180 F.3d at 1101 (internal quotations omitted).

which prompts the VE to opine as to which jobs, if any, that individual could perform with the specified limitations. *Valentine*, 574 F.3d at 689. Certain physical and other requirements of these jobs are published in the *Dictionary of Occupational Titles* ("DOT"), of which the agency takes administrative notice for "reliable job information." 20 C.F.R. § 404.1566(d). While the DOT creates a rebuttable presumption as to job classifications, the ALJ may rely upon expert testimony contradicting the DOT if there is "persuasive evidence to support the deviation." *Tommasetti v. Astrue*, 533 F.3d 1035, 1042 (9th Cir. 2008) (quotations and citations omitted). Social Security Ruling ("SSR") 00-4p provides that since "[n]either the DOT nor the VE or VS evidence automatically 'trumps' when there is a conflict[, t]he adjudicator must resolve the conflict by determining if the explanation given by the VE or VS is reasonable and provides a basis for relying on the VE or VS testimony rather than on the DOT information." SSR 00-4P, 2000 WL 1898704 at *2 (S.S.A. Dec. 4, 2000).[4] "Presumably, the opinion of the VE would comport with the DOT's guidance. But '[i]f the expert's opinion that the applicant is able to work conflicts with, or seems to conflict with, the requirements listed in the [DOT], then the ALJ must ask the expert to reconcile the conflict before relying on the expert to decide if the claimant is disabled.'" *Lamear v. Berryhill*, 865 F.3d 1201, 1205 (9th Cir. 2017) (quoting *Gutierrez v. Colvin*, 844 F.3d 804, 807 (9th Cir. 2016)). The conflict must be "obvious or apparent to trigger the ALJ's obligation to inquire further." *Id.* at 1205 (quotations and citations omitted). "This means that the testimony must be at odds with the [DOT's] listing of job requirements that are essential, integral, or expected." *Gutierrez*, 844 F.3d at 808.

At the hearing, the ALJ posed a hypothetical question to the VE consistent with the limitations in the RFC. (AR. at 85.) The VE testified an individual with those limitations could not perform Plaintiff's past relevant work, but could perform three other light jobs: small parts assembler, electrical accessory assembler, and price marker. (AR. at 85-86.)

---

[4] SSRs "do not carry the force of law, but they are binding on ALJs nonetheless . . . and are entitled to some deference as long as they are consistent with the Social Security Act and regulations." *Diedrich v. Berryhill*, 874 F.3d 634, 638 (9th Cir. 2017) (quotations and citations omitted).

The VE clarified that, in her professional experience, an individual capable of only lifting up to ten pounds could still perform these light jobs,[5] but the numbers of available jobs should be reduced by 50% to account for this additional limitation. (AR. at 86.) When the ALJ asked whether her testimony was consistent with the DOT, the VE replied "yes[,]" but explained she had "supplemented with [her] professional experience regarding . . . the lifting and then also overhead reaching . . . . The DOT does not address those issues." (AR. at 87.)

Plaintiff argues that her RFC precludes her from performing each job: specifically, that the small parts and electrical accessory assembler jobs require a production pace inconsistent with the RFC, and the price marker position requires overhead reaching, which is also precluded. (Pl. Br. at 6-11.)[6] Defendant argues it is not obvious or apparent that the price marker job requires overhead reaching, but even if it did, the ALJ reconciled the conflict by seeking clarification from the VE, who testified that her conclusion Plaintiff could perform this job without the ability to reach overhead was consistent with her knowledge and professional experience. (Def. Br. at 5.) Because the VE testified that at least 30,000 of these jobs existed even after a 50% reduction in job numbers, Defendant argues any error the ALJ made with respect to the other two jobs was harmless. (Def. Br. at 6, citing *Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 529 (9th Cir. 2014) (finding 25,000 nationwide jobs to be sufficient, but noting that it "presents a close call."). The Court agrees.

To begin, "[w]hile 'reaching' connotes the ability to extend one's hands and arms 'in any direction,' . . . not every job that involves reaching requires the ability to reach overhead." *Gutierrez*, 844 F.3d at 808 (quoting SSR 85-15, 1985 WL 56857, at *7 (1985)). By the DOT description, the Court finds no essential, integral, or expected duties of a price

---

[5] Generally, light work can require lifting up to 20 pounds. 20 C.F.R. § 404.1567(b).

[6] In her Reply, Plaintiff argues the limitation to lifting 10 pounds "frequently," or for up to six hours in a day, also constitutes a conflict with the requirements of a price marker, which "require[s] lifting some amount of weight constantly[.]" (Reply at 3.) Plaintiff did not argue this in her Opening Brief, so the argument is waived. *Singh v. Ashcroft*, 361 F.3d 1152, 1157 n. 3 (9th Cir. 2004)

marker that obviously or apparently conflict with a restriction to no overhead reaching. *Gutierrez*, 844 F.3d at 808. Primarily, a "marker" marks or attaches prices to merchandise in a variety of ways. DOT, Marker, 209.587-034, 1991 WL 671802. There is no indication this happens or is likely to occur above shoulder level. Nevertheless, there is ample persuasive authority suggesting that a restriction to no overhead reaching conflicts with occupations that require frequent reaching. *Riad v. Colvin*, No. EDCV 13-1720 RNB, 2014 WL 2938512, at *5-6 (C.D. Cal. June 30, 2014) (collecting cases). But the Court need not definitively conclude whether a conflict exists, because the ALJ reconciled any potential conflict with respect to the reaching requirements.

At the hearing, the VE explained her testimony regarding overhead reaching—a subject not addressed in the DOT—was consistent with her professional knowledge and experience, and a VE's knowledge and experience is sufficient to explain a deviation from the DOT, assuming there was one. SSR 00-4P, 2000 WL 1898704, at *2 (under the subheading "Reasonable Explanations for Conflicts (or Apparent Conflicts) in Occupational Information[,]" stating that "[i]nformation about a particular job's requirements or about occupations not listed in the DOT may be available in other reliable publications, information obtained directly from employers, or from a VE's or VS's experience in job placement or career counseling."); *see also*, *Gutierrez*, 844 F.3d at 809 ("The ALJ was entitled to rely on the expert's 'experience in job placement' to account for 'a particular job's requirements[.]'") (quoting SSR 00-4p); *Avilez v. Berryhill*, 677 F. App'x 373, 374 (9th Cir. 2017) ("[T]he ALJ correctly relied on the expert testimony because the VE provided persuasive evidence to support the deviation[,]" *i.e.*, the VE's opinion was based on long experience and knowledge of the local job market) (internal quotations omitted); *Ruiz v. Colvin*, 638 F. App'x 604, 607 (9th Cir. 2016) (ALJ reasonably relied on VE's testimony that claimant's ability to perform jobs with the use of a walker was based on his professional experience). In the decision, the ALJ explained, "[d]uring her testimony, the [VE] pointed out that the [DOT] does not expressly address reaching in specific directions, but she based her testimony regarding that issue on her professional

training and experience, which I accepted in accordance with SSR 00-4p." (AR. at 50-51.) Plaintiff argues "the ALJ is required to give some explanation for her findings beyond canned and vague language of the VE experience[,]" but cites no supportive authority. (Reply at 2.) VE testimony can constitute substantial evidence in support of an ALJ's finding at step five. *Thomas*, 278 F.3d at 960 ("Because the VE testified that Ms. Thomas could perform one of 622,000 jobs in the national economy and 1,300 jobs in Oregon, substantial evidence supports the ALJ's finding that Ms. Thomas was 'not disabled.'") Importantly, "[a] VE's recognized expertise provides the necessary foundation for his or her testimony. Thus, no additional foundation is required." *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005). The Court finds the ALJ resolved any conflict between the VE's testimony and the DOT regarding the price marker job, which exists in significant numbers nationally, and any error regarding the other two jobs is harmless. *Tommasetti*, 533 F.3d at 1038 (harmless errors are "inconsequential to the ultimate nondisability determination.") (internal quotations and citations omitted).

**B.  The ALJ did not err in his evaluation of the opinion evidence.**

In January 2017, the agency amended the regulations governing the evaluation of medical opinion evidence. *See Revisions to Rules Regarding Evaluation of Medical Evidence*, 82 Fed. Reg. 5844, 5852 (Jan. 18, 2017). The new regulations apply to applications filed on or after March 27, 2017, and are applicable here. 20 C.F.R. § 404.1520c.[7] These regulations provide that ALJs will no longer "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) . . . including those from [the claimant's] medical sources." *Id*. § 404.1520c(a). Instead, ALJs must consider the persuasiveness of medical opinions using the factors set forth in the regulations. *Id*. §§ 404.1520c(a)–(b). The "most important" of these factors are supportability and consistency. *Id*. § 404.1520c(a). Consequently, the ALJ must "explain how [she] considered the supportability and consistency factors for a medical source's medical opinions . . . in [the] determination or decision." *Id*. § 404.1520c(b)(2). Regarding

---

[7] Plaintiff filed her current application in February 2020. (AR. at 33.)

supportability, the new regulations explain that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s)[,] . . . the more persuasive the medical opinions . . . will be." *Id.* § 404.1520c(c)(1). Regarding consistency, the "more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be." *Id.* § 404.1520c(c)(2). The ALJ need not articulate how she considered other regulatory factors, such as the existence of a treating relationship, unless she finds "that two or more medical opinions . . . about the same issue are both equally well-supported . . . and consistent with the record . . . but are not exactly the same . . . ." *Id.* § 404.1520c(b)(3).

In *Woods v. Kijakazi*, the Ninth Circuit confirmed that the "recent changes to the Social Security Administration's regulations displace our longstanding case law requiring an ALJ to provide 'specific and legitimate' reasons for rejecting an examining doctor's opinion." 32 F.4th 785, 787 (9th Cir. 2022). Now, an ALJ's decision to discredit any medical opinion "must simply be supported by substantial evidence." *Id.* Importantly, however, the agency "must [still] 'articulate ... how persuasive' it finds 'all of the medical opinions' from each doctor or other source, 20 C.F.R. § 404.1520c(b), and 'explain how [it] considered the supportability and consistency factors' in reaching these findings, *id.* § 404.1520c(b)(2)." *Id.* at 792.

**(1) Dr. Barker's assigned hand limitations**

In October 2019, Plaintiff's treating family physician, Dr. Kelly Barker, opined Plaintiff should remain out of work due to cervical degenerative disc disease resulting in weak grip strength and preventing repetitive overhead lifting and lifting weights greater than 20 pounds overhead. (AR. at 866.) Dr. Barker opined the Plaintiff could not "grip and lift" weights greater than ten pounds and could not "do fine motor tests reliably with either hand." (AR. at 867.)[8]

In a letter dated January 7, 2020, Dr. Barker stated Plaintiff had been "struggling

---

[8] Dr. Barker also discussed Plaintiff's mental and cognitive difficulties (AR. at 866-67), which are addressed further below.

with progressive worsening of cervical radiculopathy and myelopathy over the last 18 months[,]" "repeatedly dropping objects," experiencing bilateral numbness in her hands, and experiencing "persistent neck and radicular bilateral upper extremity pain that prohibits her from [lifting, pushing, or pulling greater than 20 pounds,] and any detailed hand manipulation bilaterally." (AR. at 895.) Dr. Barker prohibited Plaintiff from overhead reaching. (AR. at 895.) She further clarified that while the tingling in Plaintiff's fingers had improved, her hand numbness had not, and that she had three-to-six months of physical rehabilitation activity after her cervical collar was removed. (AR. at 895.)

Regarding Plaintiff's manipulative limitations, the ALJ noted Dr. Barker's reference to "detailed hand manipulation" was unclear, and that Plaintiff's grip strength and dexterity had improved after her surgery and physical therapy. (AR. at 48.) Consequently, while the ALJ adopted the exertional and overhead lifting limitations Dr. Barker assigned, she did not find the manipulative limitations to be supported or consistent with the record. (AR. at 48.)

Plaintiff argues the ALJ erred because her analysis does not address Plaintiff's condition in the 14 months between her March 2019 onset date and the May 2020 physical therapy records the ALJ cited as evidence of Plaintiff's improvement, and that "[w]hile the timing may render [Dr. Barker's] opinion unreliable as a statement of [Plaintiff's] condition generally during the entire period, it is consistent with the records at the time and reflect[s] a period of disability over 12 months long." (Pl. Br. at 13.) In support, Plaintiff cites *Smith v. Kijakazi*, seemingly for the proposition that an ALJ errs by failing to consider the entire record during a period of alleged disability, and that conclusions may be supported by substantial evidence as to one period, but unsupported as to another. 14 F.4th 1108, 1113-14, 1115-16 (9th Cir. 2021). Plaintiff further argues "detailed hand manipulation"—the term Dr. Barker used to describe Plaintiff's limitations—is "clearly equivalent to the definition of handling" in the DOT, which involves "seizing, holding, grasping, turning, or otherwise working with hand or hands[,]" and that it was "unreasonable" for the ALJ to conclude Dr. Barker's opinion was unclear. (Pl. Br. at 13.)

The Court finds the ALJ properly addressed Dr. Barker's opinion. Importantly, it is the claimant's burden, generally, of proving disability, *Valentine*, 574 F.3d at 689, and Plaintiff offers nothing in briefing but the plain assertion that Dr. Barker's opinion "is consistent with the records at the time and reflect[s] a period of disability over 12 months long." (Pl. Br. at 13.) Plaintiff argues the ALJ ignores a 14-month period where Dr. Barker's opinion was supported, but this rationale overlooks the ALJ's earlier citation in the decision to Plaintiff's neuropsychological consultation from May 2019, where "overall test results indicat[ed] mildly reduced bilateral motor dexterity[.]" (AR. at 40, citing AR. at 920.) The ALJ also cited evidence from the month immediately after Plaintiff's surgery noting she exhibited full upper extremity motor strength and normal reflexes (AR. at 41, citing AR. 1539-40), and reported the tingling in her fingers had resolved, but that she still experienced some numbness. (AR. at 41, citing AR. at 1512.) At no point does the ALJ concede Dr. Barker's assigned upper extremity limitations were supported prior to the surgery, but even assuming those limitations were supported and resulted in disability, Plaintiff has not proven disability for a period of 12 consecutive months.

Notably, Plaintiff subsequently argues a point she ostensibly conceded: that the ALJ erred by concluding Plaintiff experienced sustained improvement when she exhibited or reported "significant functional limitations" at her initial physical therapy evaluation in May 2020, and records show she underwent a series of invasive pain management procedures in 2021, but sustained no functional improvement. (Pl. Br. at 15.) As the ALJ discussed in her medical summary, however, Plaintiff "exhibited only mild weakness in her arms (rated at 4 to 4+ out of 5)" at the start of her post-operative physical therapy and reported 60% overall improvement over the course of that therapy. (AR. at 42.) This is corroborated in the medical records. (AR. at 2527-28, 2636.) Although Plaintiff reported reoccurring pain in early 2021, she later endorsed significant pain relief after pain management procedures later that year. (AR. at 41.) In August 2021, she reported 80-90% pain relief on the right side, but ongoing left-sided pain. (AR. at 2296.) The following month, she reported 80-90% pain relief on the right, and 70% relief on the left (AR. at

2681), with additional procedures scheduled for left-sided myofascial pain. (AR. at 2684-85.) On September 16, 2021, Plaintiff underwent trigger point injections for myofascial pain. (AR. at 2719.) Although it is clear Plaintiff's neck pain had not completely resolved, substantial evidence supports the ALJ's conclusion that Plaintiff's condition improved significantly not long after she reported a reoccurrence of pain.[9]

### (2) Dr. Barker's assigned mental limitations

In the same assessment, Dr. Barker noted Plaintiff's mood was depressed and anxious, that she was "quick to anger," and that she exhibited poor-short term recall and coping skills. (AR. at 866.) She concluded Plaintiff could not "function psychologically in moderate to high stress environments [and] should not work with others in [a] customer setting." (AR. at 867.) Plaintiff summarily argues the ALJ rejected "Dr. Barker's statement regarding poor short-term recall without explanation." (Pl. Br. at 13.) The Court disagrees.

Dr. Barker listed "poor short-term recall" and "poor coping skills" as examples of "specific[ ]cognitive findings" upon which her opinions were based. (AR. at 866.) On the next page of the form, she was prompted to describe Plaintiff's "current restrictions (what [she] should not do) and limitations (what [she] cannot do)[,]" to which Dr. Barker replied, in part, that Plaintiff "cannot function psychologically in moderate to high stress environments[ and] should not work with others in [a] customer setting." (AR. at 867.) Importantly, the ALJ did explain that she "strongly considered Dr. Barker's opinion regarding the claimant's inability to tolerate moderate or high stress work environments" by restricting her work pace and the frequency of workplace changes. (AR. at 46.) The ALJ also concluded Dr. Barker's assigned social limitations were consistent with evidence showing Plaintiff's irritability and mood changes, and so adopted her conclusions. (AR. at 46.) "An ALJ may rationally rely on specific imperatives regarding a claimant's limitations, rather than recommendations." *Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015) (citations omitted). It appears that is what the ALJ did here. Dr.

---

[9] Because the Court finds this rationale to be adequately supported, it need not address the ALJ's conclusion that Dr. Barker's use of the phrase "detailed hand manipulation" is unclear.

- 12 -

Barker's specific imperatives regarding Plaintiff's limitations were that she "cannot function psychologically in moderate to high stress environments [, and] should not work with others in [a] customer setting." (AR. at 867.) Her reference to "poor coping skills" was merely a citation to evidence in support of her specific limitations. The ALJ duly considered these limitations and explained how she incorporated them into her RFC determination. (AR. at 45-46.)

**(3) Dr. Friedman**

Plaintiff argues the ALJ failed to address the prior administrative medical findings of M. Friedman, Psy.D.[10] who opined that, under the category of understanding and memory, Plaintiff had a "marked" limitation in her ability to "remember locations and work-like procedures[,]" and that the ALJ's failure to account for this limitation "led to a legally insufficient finding in the listing 'paragraph B' criteria." (AR. at 124.)[11] But as Defendant correctly points out, Dr. Friedman still found Plaintiff capable of a broad range of functions, including remembering work-like procedures and instructions, and making simple work-related decisions. (Def. Br. at 11.) Dr. Friedman also found Plaintiff capable of maintaining attention for two-hour periods; maintaining attendance and punctuality; sustaining an ordinary routine without special supervision; working in coordination with or proximity to others; completing a normal workday or work week; asking simple questions or requesting assistance; accepting instructions and responding appropriately to criticism from supervisors; and responding appropriately to changes in a work setting. (AR. at 127-28.)

Moreover, according to the form Dr. Friedman completed, the marked limitation in

---

[10] Dr. Friedman, a psychologist, provided the mental RFC for Plaintiff's reconsideration level administrative review. (AR. at 124-28.)

[11] Paragraph B "provides the functional criteria [the agency] assess[es], in conjunction with a rating scale (see 12.00E and 12.00F), to evaluate how [the claimant's] mental disorder limits [her] functioning." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(A)(2)(b). The four functional criteria are "[u]nderstand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself." *Id.* "[T]he limitations identified in the 'paragraph B' . . . criteria are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process." SSR 96-8P, 1996 WL 374184, at *4 (S.S.A. July 2, 1996).

remembering locations and work-like procedures was not included in the RFC findings: The form states, "[T]he actual mental [RFC] assessment is recorded in the narrative discussion(s), which describes how the evidence supports each conclusion. The discussion(s) is documented in the explanatory text boxes following each category of limitation . . . . Any other assessment information deemed appropriate may be recorded in the [mental RFC] – Additional Explanation text box." (AR. at 124.) Dr. Friedman's assigned marked limitation is not in the narrative discussion of the form; it is a paragraph B rating under one subcategory of "understanding and memory limitations[.]" (AR. at 124.) In the narrative discussion of this functional category, as he did with each functional category, Dr. Friedman merely remarked "see below[,]" referring to the "Additional Explanation" text box where he delineated Plaintiff's mental RFC. (AR. at 127.) In that text box, Dr. Friedman described Plaintiff's functional capacities in detail, as noted above. (AR. at 127-28.)

It is also clear that the ALJ discussed both prior administrative medical findings at length, explaining in detail her decision to adopt their recommendation for simple instructions and work-related decisions, but also to add additional restrictions to no "production-paced work" and only occasional work routine changes due to later clinical findings reflecting Plaintiff's anxious mood and perseverative thought processes. (AR. at 45.) Although Plaintiff argues Dr. Friedman's marked limitation belies the ALJ's conclusion at step three that Plaintiff has only a "moderate limitation in the ability to understand, remember, or apply information[,]" (Pl. Br. at 14), Defendant is also correct that the claimant must show marked limitations in two of the four functional categories, or an extreme limitation in one category, to meet the paragraph B criteria. (Def. Br. at 12, citing 20 C.F.R. Pt. 404, App. 1 § 12.00(A)(2)(b)). Here, the ALJ found the Plaintiff had only moderate limitations in any functional category (AR. at 37-39), and Plaintiff does not challenge the ALJ's findings with respect to any other functional category. (Pl. Br. at 14.) Consequently, even had the ALJ concluded Plaintiff had a marked limitation in understanding and memory, this would be legally insufficient to meet the paragraph B

criteria of the listing. The ALJ did not err by failing to address this specific finding.

**IT IS ORDERED** that the December 10, 2021, decision of the ALJ is affirmed.

**IT IS FURTHER ORDERED** directing the Clerk to enter judgment accordingly and terminate this action.

DATED this 14th day of August, 2023.

Honorable John Z. Boyle
United States Magistrate Judge